Chief Justice Maesiiall
delivered the opinion of tile Cou.it
On the 2d of June, 1825, Ruggles Whiting having previously conveyed to D. R. Poignard in trust a tract of land in Indiana, and several claims for money, among which was a claim on John Peck, secured by mortgage on a lot in Boston, Mass., called the Mill Pond lot, drew upon him an order- which Poignard accepted, and which is in substance as follows:
“To D.R. Poignard. This is made an order on jmu to account for the proceeds of 214 acres of land in Indiana, also for the proceeds of a certain agreement of Wilkins and Holderman to pay me $1000, after deducting your claim for expenses incurred in my business, and any claim you may have upon my brother Charles Whiting.
“To Daniel R. Southard, of Louisville. You Will also account to said Southard for any amount you may recover for me on a lot of land in Boston, situated on the Mill Pond, after deducting first your claim for expenses incurred, any claim that Doctor Cushing may make by virtue of your letter of February,.. 1825, to Daniel Hastings of Boston, by me directed to be written, &c., any claim you have against me or my brother Charles Whiting, of St. Louis, for advances made or liabilities incurred for and on account of his operations in and about and relating to his property in St. Louis.”
In 1827, administration upon the estate of Ruggles Whiting wbo died in that or the preceding year, was granted to James Richardson, who in that character and *345 in conjunction with the heirs .of Whiting, filed this bill in the Louisville Chancery Court, in July, 1835, making D. R. Poignard defendant, and claiming an account of the property placed in his hands by Whiting. In his answer filed in December, 1835, Poignard besides setting forth various transactions between himself and Whiting, and giving an account of what had been done with respect to the property in question, upon which he made large claims for himself, and showing that he had obtained a complete title to the Mill Pond lot, stated in substance the foregoing order which with other documents exhibited by him, disclosed the interest of Dr. Cushing or his representatives, and of James and Daniel R. Southard. The complainants amended their bill making the two Southards defendants who stated their claims in answers filed very soon afterwards. Poignard also filed an amended answer which he made a cross bill against the two Southards, and Mrs. Cushiug as the administratrix of Dr. E. D. Cushing, dec’d., in whose favor the order of Whiting was drawn. And he prayed that these parties might interplead, &c. A subpoena upon this cross bill was served in Massa" chusetts upon Elijah Cushing, who (and not Mrs. Cushing,) had been appointed administrator of Ezekiel Cushing, and who in October, 1836, filed his answer to Poignard’s cross bill, which he also made a cross bill against Poignard, and by subsequent amendments made Whiting’s representatives defendants, and also Daniel R. Southard, then the executor and devisee of James Southard, and invested with the entire interest of both.
con®el^ 3e-Whiting’s repretharl.tlTpS'* S°u"
Butin September, 1836, before the first answer and cross bill of Cushing’s administrator had been filed, a decree was rendered by consent of Whiting’s representatives, and the two Southard’s and Poignard, by which in pursuance of a previous agreement between these parties, Whiting’s representatives and the Southard’s, in consideration of Poignard’s claims upon Whiting,, agreed to release to him the Indiana land, and Poignard agreed to convey to James Guthrie, with special war *346 ranty, the Mill Pond lot in Boston with the rents accruing after the first of September, 1836, the previous rents being conceded to him. And by the same decree each party was directed to pay their own costs. By a written agreement between Whiting’s representatives, the two Southard’s and Guthrie, it was provided that Guthrie should, through the agency of James Southard or another designated individual, sell the Mill Pond lot, and that after being secured out of the rents and proceeds of sale in the payment of about $1600, the amount of an order and note drawn in his favor by Southard, he should convey the lot to the purchaser. The parties to this agreement seem to have claimed the disposition of the proceeds. In April, 1838, a decree was accordingly rendered, by consent, appointing James Southard a Commissioner to sell the said lot, and directing Guthrie to convey it. Cushing’s administrator, without consenting to the previous arrangements between the other parties, consented to the sale, and to the Commissioner named, and so far to this decree; and James Southard, before his death, sold the lot for upwards of $6000, which he received.
The litigation upon the original bill, and between Whiting’s representatives and Poignard, and the Southard’s having been thus terminated, the remaining questions in the case grow out of the contest between Cushing’s adm’r., and D. R. Southard, respecting the distribution of the proceeds of the Mill Pond lot. And as the order on which Southard’s claim is founded clearly gives the precedence to the claim of Dr. Cushing the only real question upon the merits of the case, is whether the claim presented by his administrator is a just and subsisting demand, and is the claim referred to in the order.
In the original answer of Cushing’s administrator he states that his intestate held at his death three notes on Ruggles Whiting, all dated the 3d of December, 1822, and payable to É. D. Cushing on demand with interest, viz: one for $1000, one for $877 25, and one for $105, *347 which notes he says are still unpaid, and,are filed with and as a fart of his answer. He claims the benefit of the order on Poignard and the first lien, states several circumstances and considerations in support of his claim. And suggests that about the time the order was given, Poignard by the direction of Whiting, wrote to D. Hastings his agent in Boston, to obtain a statement of the amount due to D. Cushing, and charge it on the trust fund, that Dr. C., did inform Hastings of his holding the three notes, &c., though they wei'e for a long time lost and possibly could not be found when Hastings called for a statement of them. But he says he has very recently found the notes whereby he is enabled to exhibit them, and shew the exact amount due on the 3d of December, 1822. He further says in the conclusion of his answer and cross bill, that he files therewith a paper (marked No. 5,) found among Dr. Cushing’s estate, showing some small charges in addition to the notes, together with credits, which is a rough and irregular sketch of an account with R. Whiting. He presumes it to be correct, but submits it to the Court as he found it, that the small credit may be given if proper. He also refers to and files with this answer, a letter from Poignard to Dr. Cushing, dated July 16th, 1826, purporting to be in answer to one just received from Dr. C., and which is also proved in the cause, in which he urges that his claim should be secured on the Mill Pond lot. Poignard in his letter in response regrets that Dr. C., had not written a year sooner, refers to Whiting’s order rather as an obstacle to his claim, but advises him to make out his account and present it to Hastings, and let him advise him (Poignard,) of it, and he will endeavor and he thinks with effect to serve him, in case of success in the suit for the Mill Pond lot.
The first amended cross bill of Cushing’s adm’r., was filed in 1841, in which he makes D. R. Southard a defendant, and among other things, says: “the claim of Dr. Cushing’s estate, made in virtue of the letter to *348 Daniel Hastings, consists of the notes and demands filed heretofore in said suit, by your orator with his answer, they being the only claims due to Dr. .Cushing, and he claims the proceeds of the sale of the Mill Pond lot, for their satisfaction. In 1843, he filed a further amended cross bill making Whiting’s representatives defendants. In 1848, they filed an answer which with its exhibits' appears to have been lost or abstracted from the papers. And in April, 1850,-they file an additional answer, supplying the loss of the first, by the rough draft of it, which professes to exhibit copies of the three notes of Whiting to E. D. Cushing, and also a power of at: torney, from W., authorizing Cushing to sell the Mill Pond lot, &c. And they admit Cushing’s claim.
Poignard answered the cross bill of Cushing’s administrator, in February, 1850, but his answer with its exhibit hereafter to be noticed, has been mislaid or abstracted.
D. R. Southard answered the same cross bill in 1843. He answers very briefly, admitting the death of James Southard, and that he is sole devisee and executor, and that said James had sold the Boston property under the decree and received upwards of $5,000. He says he does not know thatE. D. Cushing, or his administrator, had or has any claim against the estate of R. Whiting, and pleads and relies that if there ever was such claim as alleged, it has been long since paid and discharged; and he relies that James Southard was entitled to the whole proceeds of the sale of the Mill Pond lot.
In May, 18 , a decree was rendered in favor of Cushing’s administrator, against D. R. Southard as executor and devisee of James Southard, for $4940 00, together with the costs.
The sum decreed is not quite equal to the principal and interest appearing to be due at the date of the decree, either upon the three notes set up in the cross bill, or upon the balance of the account therein referred to, which is $2088 09, including interest to the 1st of December, 1826, to which date it seems to have been cal *349 culated in the account. But it is contended-, 1st, that as Elijah Cushing the administrator, was not named as a defendnnt, (but Mrs. Cushing,) he had no right to file an answer and cross bill in the case, and there was therefore, no suit properly'pending between him and Southard, &c., in which a decree could be rendered in his favor. And 2d, that the claim in the cross bill, is. founded on the three notes alone, which were not in the record at the hearing. And it is contended that they were never filed, or if filed and subsequently lost or withdrawn, that this fact has not been alleged in any pleading, nor their absence accounted for, ahd that on these grounds and for want of legitimate proof of their execution and contents, no decree could be based upon them, and that none could he based upon the account because it is not relied on or set up as the basis or evidence of the claim. And 3d, that the depositions of Poignard and others relating to said account and notes are incompetent, andthatwith or without them there is not sufficient evidence of the demand, either upon the notes or the account. '
A bill was iiied.’ against one person as adminis ¡ tvatrix who was-not administratrix, and answered by the true administrator: — - made a cross bill & answered; no - exceptions talteni to it, but proceeded to a iinalt hearing in the-Court below: — . Held that no exception could be taken in the Court of Appeals, to the regularity of the proceed-» ing — nor should, be available in the Court below, after a great lapse of time— seven years ip this case.
1. To whatever weight the first objection might have been entitled if made at an early stage of the contest, or if Southard had not answered the bill without questioning the regularity of the proceeding, it comes too late if now made for the first time, and was too late even if made at the hearing of the cause, seven years after the bill had been answered, and the suit recognized during that period. The irregularity which might have been cured by a few strokes of a pen must be regarded as having been waived. And besides, as the original litigation was substantially ended, and as the cross bill was answered by all the parties to it, there would seem to be more propriety in regarding it as an original bill, because if the' complainant therein had not been regularly made a defendant in the suit, it could not properly be considered as a cross bill, than in dismissing it for that reason, at the end of a litigation óf sév *350 en years, during which he had been recognized as a competent and legitimate plaintiff.
Where notes were mode exhibits in an answer which is made a cross bill and the defendant to the cross-bill answers, not ■contesting the ■authenticity of the notes, or ■calling for their production, or proof thereof, & they are subsequently lost out of the papees:— Held that the sider^them C°s supported by'the deposition^ ^_of the hand wrulnl thethno°esf°and jitf1 filed elthem pith the answer,
2. Although the account is expressly referred to in the original and amended cross bills as containing a statement of the demands of Cushing against Whiting the three notes were obviously the foundation of the suit, and the account was filed as auxiliary evidence in aid or explanation of the demand. Whether the allegations are sufficient to authorize a decree upon the account in the absence of all reference to the notes, it is scarcely necessary in one view of the case to decide-If there had been no notes, the allegations with respect to the account would doubtless have been different. We think there is ample evidence in the record of the existence and genuineness, and contents, of the notes as described in the original cross bill, and of their having been filed and subsequently mislaid or withdrawn, s° that they were not in the record at the hearing. The first and strongest evidence of the most important of these facts, is to be_ drawn from the pleadings themselves, from which we.have extracted so much as bears upon these questions. The statement in the first anj swer and cross bill, that the notes are therewith filed, is perhaps entitled in itself to but little weight. But the statement in the first amended cross bill in which E, R. Southard is made defendant, that they had been thqretpfpre filed, &c., is entitled to some consideration. But when we add the fact that Southard, who was deeply interested in defeating the claim, and whose answer shows that he would have denied its existence if he could, makes no motion to have them filed, and fails in his answer either to call for their production or to notice their absence, the conclusioi} is almost if not quite irresistible that the notes were then in the record. And as there is ample evidence in the transactions between R. Whiting and the Southard’s, as shown by their own exhibits and others, that D. R. Southard must have been well acquainted with the hand-writing of Whiting, and pnust have known whether the notes before him wevp *351 genuine, his failure to deny their genuineness affords the strongest inference that they were genuine. If the notes had not been in the record, or if being there, he had felt any doubt of their genuineness, he would most. certainly not have contented himself with the vague and safe statement that he did not know that E. D, Cushing had or has any claim against Whiting’s estate. As the order under which Southard claimed showed that there'was such a demand, and the answers of Poignard apprised him of its continued existence, for he must have known that Whiting had not the means of payment except through Poignard, his denial of knowledge must be construed strictly as a denial of actual personal knowledge. And considering his relation to the claim and to the property on which it as well as his own demands was secured, it would be reasonable to-infer that he had made such enquiry into its nature and amount as were satisfactory, and that if he had found reason to question either, he would not have stopped in his answer with denying knowledge • (that is, actual personal knowledge,) of its existence, and with pleading and relying upon its payment- if it ever existed, but would have made more specific objections if his information had warranted him in so doing. The cross bill charges that he had notice of Cushing’s claim, which he fails to answer except as above stated. These circumstances and considerations furnish some inference in favor of the justice of the claim as founded on the notes of Whiting.
Then, as to the notes themselves, it is certain that they were not in the record at the hearing, and for some uncertain period before; and assuming that they had been filed, it is sufficiently evident that they must have been casually mislaid or destroyed, or that they were withdrawn improperly by some one. If withdrawn, it is not material by whom, unless it was by the administrator of Cushing, or some one acting for him; and considering his attitude in the cause, and the inferences already noted as deducible from the pleadings, *352 †0 which may be added that there is no suggestion of any suspicious or ünfavorable circumstance appearing on the notes, there is no presumption that it was done by or for him.
But there is still other evidence as to the filing of the notes, and as to theirgenuineness and contents and loss. G. Duncan, the counsel who wrote and filed the answer, states in his deposition, taken in January, 1850, that he received from Sidney Bartlett, the attorney and agent of Cushing’s administrator in Boston, a letter which he exhibits, dated Boston, October 8th, 1836, and postmarked accordingly, enclosing the first answer and cross bill, and, as he believes, the original notes of Whiting, which he thinks he filed with the answer, as it was his habit to do so, and he was generally required to do it, that he believed the notes were correctly described in the answer referring to them — that he had seen Ruggles Whiting write, and believes the signatures were in his hand-wi-iting, and if it had not been so, he would have been impressed with the fact. He also states that upon learning that the notes were not in the papers, he mnde a thorough search in the Clerk’s office, and also in his own office, and could not find them. Sidney Bartlett, in his deposition, taken in March, 1850, states that he enclosed the three original notes to Duncan, together with the answer of Cushing’s administrator, in a letter, dated October 8th, 1836, and which, as appears from the certificate of A. C. Spooner, then in his office, was deposited in the Post Office at Boston on the same day. Pie states the date and tenor of the notes, of which he had copies, as stated in the cross bill, and as exhibited in the copies filed by Whiting’s administrator, which are dated “Louisville, December 3d, 1822.” Poignard, in his deposition, taken in 1850, states that Dr. Cushing was in Louisville in the fall of 1822, to settle with Whiting. Mrs. Cushing, the widow of Dr. E. D. Cushing, who had released her interest, states- that on his return from Kentucky, he brought Whiting’s notes — that sometime afterwards he *353 made a strict search for them and could not find them, and was much troubled about it. And Bartlett proves that in 1834, he acting for Cushing’s administrator, endeavored to find, and ultimately succeeded in finding the three notes, in the office of an attorney in Boston, who had been consulted and occasionally employed by Dr. Cushing. And it is proved by Thomas Cushing that about August, 1826, his nephew, Dr. E. D. Cushing, wrote to him for a copy of R. Whiting’s note to David Sawyer, for $1400, a copy of which he sent in answer, at the foot of a letter which, dated August 10th> 1826, is annexed to his deposition, and contains the copy of a note as follows:
“ Boston, Oct. 9,1816.
“ Value received, I promise to pay Mr. David Sawyer fourteen hundred dollars in sixty days, with interest.
“Ruggles Whiting.”
The same witness proves 'that E. D. Cushing’s wife was the only daughter and sole heir of David Sawyer, and Poignard says Sawyer had lent money to Whiting. It will be recollected that D. R. Poignard, in July, 1836, wrote to Dr. Cushing to present his account or claim to D. Hastings, &c. Several witnesses prove that the account presented to them, purporting to be an account of E. D. Cushing with Ruggles Whiting, showing a balance of $2088 09, the body of which is in the hand-writing of said Cushing, and which we understand to be the same filed by his administrator with his cross bill, has upon it, in the hand-writing of D. Hastings, now dead, the following: “Dr. Cushing, account vs R. Whiting, 1826.” Which shows that in conformity with the letter of Poignard to Cushing, and with-the order of Whiting accepted by Poignard, Dr. Cushing’s account had been presented to D. Hastings, claiming a balance of $2088 09 against Whiting. And Poignard says in his deposition above referred to, that Hastings sent him an account of Dr. Cushing, showing. *354 the same balance, and as he believes, containing the same items, which he exhibited to Whiting, who admitted its correctness, and directed its payment as by the order accepted by him, and that Whiting signed a writing to that effect indorsed upon the account. This he says is the claim referred to in the order. The papel', he says, was filed by him in this suit, and some of the interrogatories seem to have been framed with reference to it. But it is not now in the record.
The first items in the account against Whiting are-1826. To his note, dated at Louisville 1st December
1822, $1915 66
To interest on same, say 4 years, 458 75
To his note, dated at Louisville, 1st December, 1822, 100 00
To interest on same 4 years, • 36 00
Then follow charges for services, &c., and credits, which, with interest, amount to $600, and leave the balance of $2088 09 above stated. The discrepancy between the notes stated in the account and the three notes set up in the bill, is relied on as an argument against both. But we think it is not to be doubted upon the evidence, that Dr. Cushing had received, on settlement with Whiting, his three notes as described in the bill, and that he made out this account in 1826 under the advice of Poignard, to present his claim to blastings. About the same time he obtained the copy of Whiting’s note to Sawyer, which, with the interest from its date, calculated from the 1st of December, 1822, and throwing off one-third of a month of 30 days, amounts to $1915 66, which exceeds the aggregate amount of the three notes by only about $33 40. It may be regarded as certain that the note to Sawyer was made the basis of the first charge in the account, and that it was sent for for that purpose.' And the inference is authorized by the facts that this was done because the three notes of Whiting could not be found when the account was to be made out, and that as Dr. *355 Cushing, in right of his wife was entitled to the pro-needs of that note, it had in fact constituted the principal item in the settlement at Louisville, when the three notes were given, and that by some small credit or mistake in calculation, its amount was reduced to $1877 95, which sum was then divided into the two larger notes, and part of it may have been thrown into the note for $105. It is evident that the charges of the two notes as dated at Louisville, were made in reference to the settlement and notes made there in December, 1822, and were intended to conform to them, while the discrepancy in date, number and sums show that these notes were not present, and that their precise tenor was forgotten. And the sending for the note of Sawyer, and the coincidence between it and the first note charged, shows that it was resorted to to supply the forgotten items. And this, with the relationship of Cushing to Sawyer’s estate, leads to tbe inference that the same note had been used in the settlement with Whiting.
This last inference is, however, not necessary for the support of the notes, which, wholly unimpeached as they are, constitute as good evidence of Cushing’s claim as any which is furnished in favor of that of Southard, which, by the very instrument under which he claims to hold the proceeds of the Boston property, is postponed to any claim which Dr. Cushing may make to D. Hastings. But the inference under notice tends strongly’ to identify the claim under the notes, withthat under the account which was exhibited to Hastings, and approved and directed to be paid by Whiting. And the justice of the account is substantially corroborated by the notes executed at Louisville. If the notes had been present, the account would doubtless have stated them with precise accuracy; for the three notes certainly were the claim, or part of the claim, secured by the order. The discrepancies can only be accounted for by their absence. And if they were absent, the. discrepancies are not greater- than might be expected from a man who had forgotten where he had placed *356 notes of this magnitude, and who, forgetting minor circumstances, and forgetting the exact apportionment o£ cja¡m among the several notes, might still remember the basis of the claim and of the settlement, and would naturally resort to that basis as likely to produce substantially the same results as before. Our conclusion is, that the account, though not precisely accurate with regard to the notes, is substantially so; and must be deemed just to the extent of the three notes executed at Louisville, if those notes were themselves unpaid. And this conclusion corroborates the statement of Poignard, that Whiting admitted the account, and directed its payment. While, on the other hand, the exhibition of the account with the notes by Cushing’s administrator, tends to prove the genuineness of the notes, since, if fabricated, they might, and probably would have been made to conform to the account. But this point we consider as being placed beyond doubt by the other circumstances which have been mentioned.
With regard to the payment of the notes, which there has been no attempt to prove, the only circumstance which can afford any possible presumption in favor of it, is the fact of their being out of Dr. Cushing’s possession. But they were in possession of bis altorney and counsellor, and if placed there by or for Whiting, the fact should have been proved. Besides, Whiting recognized the debt up to a short time before his death. And in fact his circumstances for years before, as manifested in this case, were such as to preclude all probability of his having paid this debt after December, 1822, and especially after June, 1825, when he recognized the existence of a claim in favor of Dr. Cushing, by the order under which Southard claims, and in such terms as would lead to the inference that it was in a liquidated form.
But it is contended that the depositions of Bartlett, Duncan, and Poignard, which were excepted to as incompetent, should have been rejected — and it is neces *357 sary to notice the grounds of this exception. The objection to Bartlett and Duncan, is, that being both attorneys and agents of Cushing’s administrator, they are interested in his obtaining a decree, as they will be thereby released from all responsibility on account of the loss of the notes, which were in their possession. And as to Poignard, it is said that he is responsible to Cushing’s administrator for the trust fund, and therefore interested in a decree being obtained against Southard. And that he is moreover a party to the suit, and liable for the costs, and therefore incompetent, though leave was given to take his deposition subject to exceptions.
An attorney at law, to whom pa pers were confided to be used as exhibits in a chanceiy suit is a competent wit* ness lo prove llieir contents their loss from* the files of the. Court: he is but-the agent andj competent for. the same reason, that an agent is competent to., prove that he de», livered property, paid money, &c*
We think there is no ground for any of these objections. As to the attorneys, if there be any ground for a question between them and their employer as to their diligence or skill or want of either, it is not involved in the present case. The decree does not depend upon the presence or absence of the notes, and certainly not upon the question whether their absence was occasioned by the neglect or unskillfulness of the attorneys. The loss of the notes, whether by the carelessness of the attorneys or not, could at most only render it necessary to file an amended bill alleging the fact, or by some other means to lay the foundation for proving their contents by secondary evidence. And. so far from these attorneys being incompetent to prove what they did with the notes or that they are lost, because they had them in possession and should have taken care or made proper disposition of them, they are for this very reason the most proper persons to prove what they did with them. A decree against Cushing’s adm’r., would not certainly render the attorneys or either of them liable, and it would not be evidence against either of any fact, except that such a decree was rendered. And although a decree for their employer might close all question as to their responsibility, if this circumstance should render them incompetent, the same objection *358 would exclude the agent from being a witness for his principal in almost every case, and certainly in every case in which a recovery by the principal depends upon the agent’s having done his duty in the ordinary course of bis principal’s business. But the general rule applicable to agents is directly the reverse, and it is necessarily so,in order to subserve the purposes of society in the ordinary transactions of men. Nothing is more common than for the agent to be called by his principal to prove the payment of money or delivery of property which has been in his possession, although in all such cases, the agent might be responsible to his principal if he has not delivered the property according to his duty, and a recovery by the principal would relieve him from this responsibility. It is where the principal is sued for the negligence or unskilfuln'ess of his agent, or where the principal sues for an injury to his property, and the question is whether it arose from the improper conduct of his own agent or of the defendant, that the agent is held to be incompetent.
One who had been a trustee, hut who had given up (he fund to t{ie custody of the Courtis com peient to prove ademandagainst cestui que trust.
With regai’d to Poignard, who is called to prove facts tending to support the complainant’s demand, and to give it precedence in the distribution of the fund in contest, he has clearly no interest on that' side of the case so far as appears in the present record. If Poignard retained the trust property and his original interest in it, it would be against his interest to establish Cushing’s claim. If he could be made liable to Cushing’s adm’r.-,-for having transferred the trust property or on any other ground connected with the trust, it would be necessary first to establish the claim which ho sustains by his evidence. A decree against the claim, upon any ground except that of his having conveyed the property to Guthrie under the agreement with the Southards, &c., would free him from all responsibility to Cushing’s adrn’r., and a decree against it on any ground whatever, would free him certainly from all responsibility to Southard, if in a different result' he *359 could be subject to any, But he is under no possible responsibility to Cushing’s adm’r., in any event of the suit, because the proceeds of the only property for which he could have been responsible to him are, by the consent of the administrator, in other hands, under the control of the Court, and amply sufficient to satisfy the claim to its fullest extent. And if Poignard were liable to him for the solvency of Southard, that liability could only arise under a decree against Southard which his evidence tends to procure. Then, as a -decree in Southard’s favor would have secured to him everything which under the first consent decree', and the agreement on which it was founded, he could claim, we do not perceiyq any possible interest against Southard’s success, growing out of Poignard’s position, with respect either to the parties or the property. His attitude in this respect would rather seem to make him interested on the side of Southai’d. Then as to the costs. These were disposed of in the original suit by the consent decree. And in the suit upon the cross bill, Poignard certainly would not be liable to Cushing’s administrator, .unless the latter succeeded in his claim upon the trust fund in the hands of Southard, which in that event would be liable for the costs, and was fully sufficient. And in fact from the time of the decree for a sale by James Southard, or at any rate from the filing of the amended cross bill against Daniel R. Southai’d, claiming the proceeds of the sale, Poignard was" but a nominal party, and was on every ground a competent witness.
It is said however, that though he is competent, he is not credible, because he violated his duty and the trust reposed in him by Whiting, in attempting to appropriate to himself the Mill Pond lot, under a purchase of the equity of redemption for an insignificant sum, and more especiallyjby his disingenuous and delusive letter of July, 1826, to Dr. Cushing. But although these circumstances, and his failure to disclose at an- *360 earlier period, the amount and character of Dr. Cushing’s claim, so far as known to him, may detract from his credit, they certainly do not disprove his statements, which are in the main and so far as they are material, corroborated. It has been seen however, that we regard the main facts, the existence and genuineness of the notes, their having been hied as part of the record, and having been afterwards lost or taken from it, as being substantially proved independently of the depositions which have been received too, rather as subsidiary evidence. And as we are of opinion upon all the evidence, that the demand of Cushing’s administrator, upon the three notes, set up by him, and his right to precedence as claimed, are sufficiently established, it only remains to say that as the loss of the notes was not a fact necessary to give jurisdiction to the Court, but only operated to let in secondary evidence of their contents, it was not necessary to allege it in any pleading, but was sufficient to prove it by affidavit or deposition. And as this was sufficiently done by the deposition of Duncan, and as the contents of the notes were fully proved in the manner before stated, the case was in a condition to authorize the decree, which is therefore affirmed.
Thruston for plaintiff; Ripley for defendant.